UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD M. SAWYER and | ) | |
| ASTA S. SAWYER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

The United States of America, at the direction of a delegate of the Attorney General and with the authorization of a delegate of the Secretary of the Treasury, brings this civil action pursuant to 31 U.S.C. §§ 5321(b) and 3711(g)(4)(C) to collect civil penalties, plus statutory additions, assessed against the defendant Donald M. Sawyer and the defendant Asta S. Sawyer (the "Sawyers") due to their failure, willful on the part of Donald and non-willful on the part of Asta, to timely report their financial interests in foreign bank accounts for calendar years 2005 through 2012 and 2014, as required by 31 U.S.C. § 5314 and its implementing regulations. For its complaint, the United States alleges as follows:

### JURISDICTION AND PARTIES

1.    The district court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355 because this case arises under a federal statute, the United States is the plaintiff, and the action seeks recovery or enforcement of civil penalties.

2.      The defendant Donald M. Sawyer (or "Mr. Sawyer") resides in Manchester, New Hampshire, within the jurisdiction of this Court.

3.      The defendant Asta S. Sawyer (or "Mrs. Sawyer") resides in Manchester, New Hampshire, within the jurisdiction of this Court.

### LEGAL DUTY TO REPORT FOREIGN FINANCIAL ACCOUNTS

4.      Section 5314 of Title 31 of the United States Code authorizes the Secretary of the Treasury to require residents or citizens of the United States to report certain transactions with foreign financial entities. Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists." 31 C.F.R. § 1010.350(a).

5.      To fulfill this reporting requirement, a United States person must file with the Internal Revenue Service a "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." *Id.*

6.      An FBAR requires a United States person to disclose for the calendar year being reported, among other things, the maximum value of each foreign account, the type of account, the name of the financial institution in which the account is held, the account number or other designation, and the mailing address of the financial institution in which the account is held.

7.     For years 2005 to 2012, United States persons reported their foreign account relationships on the Form TD-F 90-22.

8.     For the year 2014, United States persons reported their foreign account relationships on FinCEN Form 114.

9.     For all calendar years at issue (2005 through 2012 and 2014), an FBAR was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." *See* 31 C.F.R. § 1010.306(c) (March 1, 2011 and later); 31 C.F.R. §§ 103.24 & 103.27 (through Feb. 28, 2011).

10.     Schedule B is an attachment to the individual federal income tax return (Form 1040) that is used for reporting, among other things, interest and dividend income, as well as any financial interest in or signature or other authority over financial accounts located in foreign countries. For all calendar years at issue, Schedule B contained a part called "Foreign Accounts and Trusts" referring to the FBAR filing requirement and alerting the taxpayer that, if he or she had an interest in or signature or other authority over a financial account located in a foreign country, the taxpayer should see the instructions for the Schedule B or the appropriate FBAR form for filing requirements and exceptions.

11.     Section 5321(a)(5) of Title 31 authorizes the imposition of civil penalties for failure to comply with the reporting requirements of § 5314.

12. Section 5321(a)(5)(C) sets the maximum amount of the penalty for willful violations of § 5314's reporting requirements to the greater of $100,000 or 50% of the balance in the account at the time of the violation.

13. Non-willful violations of § 5314's reporting requirements are subject to civil penalties of up to $10,000 for each violation. *See* 31 U.S.C. § 5321(a)(5)(B)(i).

14. A penalty under 31 U.S.C. § 5321(a)(5) is subject to statutory additions, including interest and late-payment penalties pursuant to 31 U.S.C. § 3717.

## FACTUAL BACKGROUND

15. For many years, the Sawyers held millions of dollars of assets in foreign accounts in notorious tax havens, while failing to report the existence of the accounts on FBARs, nor reporting the existence of the accounts or the income and gains earned in them on their federal tax returns.

16. As the banks the Sawyers used began to scrutinize accounts during a crackdown of hidden overseas accounts by the United States government, the Sawyers engaged in "bank hopping," shifting assets to different banks, rather than begin to comply with their United States reporting and tax obligations.

17. Mr. Donald M. Sawyer is a natural-born United States citizen.

18. Mr. Sawyer holds an associate's degree in chemistry and a bachelor's degree in political science.

19.     After college Mr. Sawyer enlisted in the United States Air Force, where he spent twenty years in various positions, including as a pilot. Mr. Sawyer retired from active duty in the mid-1970s.

20.     After retiring from active duty, Mr. Sawyer worked for the Department of Defense, performing and managing contract cost audits and serving as a policy advisor on contract and acquisition issues.

21.     Since retiring in the mid-1990s, Mr. Sawyer has operated some businesses, including selling books on investments and business software.

22.     Mrs. Asta S. Sawyer is a naturalized U.S. citizen. She was born and raised in Iceland. In the 1950s, she came to the United States and met and married Donald Sawyer. She graduated from high school and studied literature for one year in college.

23.     For decades, including for the tax years at issue, Mr. Sawyer prepared joint federal income tax returns for himself and Mrs. Sawyer, without the use of tax preparation software.

24.     Mr. Sawyer has acknowledged having seen the question on line 7 of Schedule B asking whether the taxpayer had, during the prior calendar year, an interest in or signature or other authority over a financial account located in a foreign country.

25.     The Sawyers did not disclose any foreign account on Schedule B of their federal income tax returns for tax years 2005 through 2012. In particular, the

Sawyers left line 7 of Schedule B blank for tax years 2005 to 2008 and they omitted Schedule B entirely from their returns for tax years 2009 through 2012.

26.    Since as early as the 1960s through at least 2014, the Sawyers continuously owned foreign financial accounts, which were located in Switzerland, Austria, and, most recently, in St. Vincent and the Grenadines.

27.    Despite having interests in many foreign accounts over the years, the Sawyers failed to timely report the existence of these accounts on FBARs for calendar years 2005 through 2012.

28.    Even though the IRS had begun examining the Sawyers for their FBAR compliance in 2013, the Sawyers failed to timely file an FBAR for calendar year 2014.

29.    In addition to failing to disclose their interests in foreign accounts, the Sawyers also failed to report, on their joint United States income tax returns for the years at issue, dividends, interest, and capital gains realized in and from the foreign accounts.

### Defendants' Financial Dealings with Credit Suisse

30.    The Sawyers had a financial interest in and signature authority over foreign accounts at Credit Suisse in Switzerland, from at least 2005 through 2009.

31.    The Sawyers opened an account at Credit Suisse, a bank located in Switzerland, as early as 1966.

32.    Over the following decades, Mr. Sawyer funded the Credit Suisse accounts primarily or entirely from his own earnings.

33.     The Credit Suisse accounts were in the name of "Mrs. Asta S. Sawyer," with Donald Sawyer exercising authority over the accounts.

34.     The Sawyers communicated with Credit Suisse by telephone calls, and he made deposits with the bank by mailing checks.

35.     The Sawyers received quarterly statements from Credit Suisse, which were mailed to addresses in Canada.

36.     Sometime in mid-2009, while on a trip to Zurich, the Sawyers discussed closing the account with a Credit Suisse account advisor. This was around the same time that Credit Suisse began forcing United States clients to comply with United States tax requirements or leave Credit Suisse.

37.     In connection with Credit Suisse's pleading guilty to conspiracy to aid and assist United States taxpayers in filing false income tax returns and other documents with the Internal Revenue Service, Credit Suisse has acknowledged that "[i]n or about Spring 2009, … [Credit Suisse's] existing U.S. resident clients were offered a choice: transfer to [a Credit Suisse affiliate] and, if they were not already tax compliant, become tax compliant or leave the bank." Statement of Facts ¶ 58, *United States v. Credit Suisse AG*, No. 1:14-CR-188 (E.D. Va. May 19, 2014) (available at www.justice.gov/iso/opa/resources/3852014519191527936665.pdf).

38.     Credit Suisse further acknowledged that "certain managers assisted their U.S. clients in identifying other offshore financial institutions in Switzerland and elsewhere that would accept accounts held by U.S. persons, which further aided the clients in concealing their accounts from the IRS." *Id.* ¶ 60.

39.    On December 14, 2009, the Sawyers' Credit Suisse accounts were closed, shortly after a transfer of approximately $1.3 million in assets to DZ Privatbank.

### Defendants' Financial Dealings with Valartis

40.    The Sawyers had a financial interest in and signature authority over foreign accounts at Valartis Bank in Austria, from at least 2005 through 2011.

41.    At some time in or before 2005, the Sawyers opened accounts at Valartis Bank, a bank operating in Switzerland and Austria.

42.    The Sawyers claim that they met a man who worked for Valartis at an investment seminar and then wrote to the bank inquiring for account-opening forms.

43.    During the years at issue, the Sawyers' Valartis Bank accounts were located in Austria.

44.    The Sawyers have stated that the accounts at Valartis Bank were in the name of Mrs. Asta Sawyer, while also acknowledging that Donald Sawyer was an authorized user of the account.

45.    The Sawyers communicated with Valartis Bank by telephone and mail.

46.    In or about May 2011, the Sawyers' Valartis Bank accounts were closed, with the remaining funds transferred to DZ Privatbank.

### Defendants' Financial Dealings with DZ Privatbank

47.    The Sawyers had a financial interest in and signature authority over foreign accounts, at DZ Privatbank in Switzerland from at least 2009 through 2012.

48.     The Sawyers had a meeting with a vice president at DZ Privatbank, a bank in Switzerland, sometime in 2009, after which account-opening forms were sent to them.

49.     DZ Privatbank has publicly acknowledged that, in 2009, it accepted United States customers whose accounts were being terminated at Credit Suisse, around the same time Credit Suisse was reported to be threatening to close the accounts of United States account holders who were not tax complaint in the United States. DZ Privatbank (Schweiz) AG Non-Prosecution Agreement, Statement of Facts ¶ 36 (available at www.justice.gov/opa/file/809361/download).

50.     The Sawyers opened accounts with DZ Privatbank in Switzerland on December 11, 2009, funded by an initial transfer deposit from Credit Suisse.

51.     The Sawyers have stated that the accounts at DZ Privatbank were in the name of Asta Sawyer, while also acknowledging that Donald Sawyer was an authorized user of the account.

52.     All communication between the Sawyers and DZ Privatbank were done via telephone calls and mail correspondence. Deposits and withdrawals were made via ATM, check, and wire transfers.

53.     Mr. Sawyer has stated that he received correspondence from DZ Privatbank and was told via telephone that the bank was having problems with United States customers.

54.     The Sawyers' accounts at DZ Privatbank were closed on July 4, 2012, with the remaining funds sent to Loyal Bank.

## Defendants' Financial Dealings with Loyal Bank

55.     The Sawyers had a financial interest in and signature authority over foreign accounts at Loyal Bank Limited in the tax haven of St. Vincent and the Grenadines, from at least 2012 through 2014.

56.     On January 5, 2012, the Sawyers opened an account with Loyal Bank.

57.     To open their Loyal Bank account, the Sawyers requested account-opening forms over the internet and sent them back by mail.

58.     Statements from the Sawyers' Loyal Bank account are addressed to Mrs. Sawyer, with a mailing address in Alberta, Canada. Mr. Sawyer also had signatory authority over this account.

59.     In 2014, the remaining Loyal Bank funds were transferred to an account at Bank of America, and the Loyal Bank account was closed on August 6, 2014.

## The Balances of Defendants' Accounts During the Years at Issue

60.     The highest aggregate balance of the Sawyers' undisclosed foreign accounts during the calendar years at issue (2005 to 2012 and 2014) was, at a minimum, $4,192,399.95, which was the combined balance of their accounts at Valartis Bank ($1,106,657.90) and DZ Privatbank ($3,085,742.05) on March 31, 2011, as reflected on statements for that date.

61.     In calendar year 2005, Mr. Sawyer and Mrs. Sawyer each had a 50% ownership percentage, financial interest in, and control and signatory authority over accounts at the foreign banks, with a minimum highest balance for the year

(*i.e.*, the account's highest balance during the course of the year was at least the

stated amount), as follows:

| Bank | Account No. (ending) | Minimum Highest Account Balance |
| --- | --- | --- |
| Credit Suisse | 6-91 | $59,492 |
| Credit Suisse | 6-92 | $704,000 |
| Credit Suisse | 6-92-2 | $1,660 |
| Valartis | 5021 | $43,472 |
| Valartis | 5041 | $7,703 |
| Valartis | 5031 | $39,766 |
| Valartis | 956 Stocks | $146,827 |
| Valartis | 956 Commodities | $176,600 |

62.    In calendar year 2006, Mr. Sawyer and Mrs. Sawyer each had a 50%

ownership percentage, financial interest in, and control and signatory authority

over accounts at the foreign banks, with a minimum highest balance for the year, as

follows:

| Bank | Account No. (ending) | Minimum Highest Account Balance |
| --- | --- | --- |
| Credit Suisse | 6-91 | $2,634 |
| Credit Suisse | 6-92 | $1,029,612 |
| Valartis | 5021 | $45,671 |
| Valartis | 5041 | $7,390 |
| Valartis | 5031 | $10,659 |
| Valartis | 956 Stocks | $254,647 |
| Valartis | 956 Commodities | $273,600 |

63.    In calendar year 2007, Mr. and Mrs. Sawyer each had a 50%

ownership percentage, financial interest in, and control and signatory authority

over accounts at foreign banks, with a minimum highest balance for the year, as

follows:

| Bank | Account No. (ending) | Minimum Highest Account Balance |
| --- | --- | --- |
| Credit Suisse | 6-91 | $4,130 |
| Credit Suisse | 6-92 | $1,189,060 |

| Valartis | 5021 | $131 |
|----------|------|------|
| Valartis | 5041 | $6,044 |
| Valartis | 5031 | $68,591 |
| Valartis | 956 Stocks | $292,260 |
| Valartis | 956 Commodities | $286,200 |

64.     In calendar year 2008, Mr. and Mrs. Sawyer each had a 50%

ownership percentage, financial interest in, and control and signatory authority

over accounts at the foreign banks, with a minimum highest balance for the year, as

follows:

| Bank | Account No. (ending) | Minimum Highest Account Balance |
|------|----------------------|--------------------------------|
| Credit Suisse | 6-91 | $6,783 |
| Credit Suisse | 6-92 | $839,812 |
| Valartis | 5021 | $746 |
| Valartis | 5041 | $4,471 |
| Valartis | 5031 | $2,936 |
| Valartis | 956 Stocks | $285,618 |
| Valartis | 956 Commodities | $353,000 |

65.     In calendar year 2009, Mr. and Mrs. Sawyer each had a 50%

ownership percentage, financial interest in, and control and signatory authority

over accounts at the foreign banks, with a minimum highest balance for the year, as

follows:

| Bank | Account No. (ending) | Minimum Highest Account Balance |
|------|----------------------|--------------------------------|
| Credit Suisse | 6-91 | $5,301 |
| Credit Suisse | 6-92 | $1,355,750 |
| Valartis | 5021 | $904 |
| Valartis | 5041 | $3,601 |
| Valartis | 5031 | $487 |
| Valartis | 956 Stocks | $263,335 |
| Valartis | 956 Commodities | $363,600 |
| Valartis | 6051 | $100,180 |

66.     In calendar year 2010, Mr. and Mrs. Sawyer each had a 50%
ownership percentage, financial interest in, and control and signatory authority
over accounts at the foreign banks, with a minimum highest balance for the year, as
follows:

| Bank | Account No. (ending) | Minimum Highest Account Balance |
|---|---|---|
| Valartis | 5021 | $448 |
| Valartis | 5041 | $1,972 |
| Valartis | 5031 | $745 |
| Valartis | 956 Stocks | $334,873 |
| Valartis | 956 Commodities | $612,600 |
| Valartis | 6051 | $100,990 |
| Valartis | 1001 Deposits | $40,788 |
| DZ Privatbank | 961 | $2,447,543 |
| DZ Privatbank | 001 | $3,048 |
| DZ Privatbank | 840 | $1,073 |

67.     In calendar year 2011, Mr. and Mrs. Sawyer each had a 50%
ownership percentage, financial interest in, and control and signatory authority
over accounts at the foreign banks, with a minimum highest balance for the year, as
follows:

| Bank | Account No. (ending) | Minimum Highest Balance |
|---|---|---|
| Valartis | 5021 | $233 |
| Valartis | 5041 | $579 |
| Valartis | 5031 | $44 |
| Valartis | 956 Stocks | $316,737 |
| Valartis | 956 Commodities | $974,000 |
| Valartis | 1001 Deposits | $42,645 |
| DZ Privatbank | 961 | $2,779,200 |
| DZ Privatbank | 001 | $70,975 |
| DZ Privatbank | 840 | $1,046 |

68.     In calendar year 2012, Mr. and Mrs. Sawyer each had a 50%
ownership percentage, financial interest in, and control and signatory authority

over accounts at the foreign banks, with a minimum highest balance for the year, as follows:

| Bank | Account No. (ending) | Minimum Highest Balance |
|------|----------------------|-------------------------|
| DZ Privatbank | 961 | $327,258 |
| DZ Privatbank | 001 | $39,328 |
| DZ Privatbank | 052 | $192,205 |
| Loyal Bank | 840 | $2,891,972 |

69.     In calendar year 2014, Mr. and Mrs. Sawyer each had a 50% ownership percentage, financial interest in, and control and signatory authority over an account at Loyal Bank, ending in -840, with a minimum highest balance for the year of $961,429.

**Defendant's Interactions with the IRS Regarding their Foreign Accounts**

70.     On December 18, 2013, after retaining counsel, the Sawyers made a voluntary disclosure under the Internal Revenue Service's 2012 offshore voluntary disclosure program.

71.     Pursuant to the terms of the 2012 program, the Sawyers, through their counsel, submitted amended income tax returns and delinquent FBARs for the 2005 to 2012 years in or about January 2015. Through counsel, the Sawyers also filed a timely FBAR disclosing their foreign accounts for the calendar year 2013.

72.     Even after having retained counsel for their FBAR compliance issues and having begun to disclose their foreign accounts on late-filed FBARs, the Sawyers failed to file an FBAR for 2014, and have not done so to this day.

73.     The Sawyers did not resolve their FBAR penalty liabilities through the offshore voluntary disclosure program.

**IRS's Calculation of Willful FBAR Penalties Against Defendant Donald M. Sawyer**

74.    Utilizing the statutory discretion afforded to the Secretary of the Treasury, the Internal Revenue Service determined willful penalties against Donald M. Sawyer for calendar years 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2014 by calculating the aggregate highest balance for one year based upon all unreported accounts for these years. The IRS then adjusted this amount by half to take into account a 50% ownership interest imputed to Mr. Sawyer in each account.

75.    By IRS's calculations, year 2011 had the highest aggregate balance of $4,185,459, of which $2,092,730 was allocated to Mr. Sawyer. The IRS determined the willful FBAR penalty by calculating 50% of that amount allocated to him, for a total penalty of $1,046,365.

76.    The IRS determined the penalty amount for each of the years (the "yearly penalty amount") by allocating the total penalty amount, $1,046,365, among the nine years, based upon the ratio of the aggregate highest balance for each year to the sum of the aggregate highest balances for all years.

77.    Then, to allocate the penalty amounts within each year to each of the individual unreported accounts, the IRS allocated the yearly penalty amount based upon the ratio of that individual account's highest balance to the aggregate highest balance for the year. The per-account penalty amount was then adjusted in two instances, where the amount allocated to an account for a particular year exceeded both $100,000 and 50% of the known or confirmed account balance on June 30 of the reporting year, by allocating the portion exceeding $100,000 to another account for

the year, thus ensuring the per-account penalties were within the limits of
31 U.S.C. § 5321(a)(5)(C).

### CLAIM TO REDUCE WILLFUL FBAR PENALTIES TO JUDGMENT
#### (AGAINST DEFENDANT DONALD M. SAWYER)

78.    The defendant Donald M. Sawyer was subject to the reporting
requirements contained in 31 U.S.C. § 5314 for the 2005, 2006, 2007, 2008, 2009,
2010, 2011, 2012, and 2014 calendar years because he was a United States citizen,
he had an interest in and/or signature or other authority over the above-described
foreign accounts, and the balance of the accounts exceeded $10,000.

79.    Mr. Sawyer violated the reporting requirements of 31 U.S.C. § 5314
because he failed to timely report the above-described foreign accounts on FBARs.

80.    Prior to entering the IRS's offshore voluntary disclosure program in
late 2013, Mr. Sawyer made no attempt to timely file FBARs.

81.    Mr. Sawyer knew, or should have known, that he was required to file
FBARs disclosing his interest in foreign financial accounts.

82.    Mr. Sawyer's failure to comply with the reporting requirements was
willful under 31 U.S.C. § 5321(a)(5).

83.    On April 16, 2021, a delegate of the Secretary of the Treasury assessed
civil penalties under 31 U.S.C. § 5321(a)(5) against Mr. Sawyer for the following
years and amounts:

| Year | Amount | Foreign Banks |
|------|--------|---------------|
| 2005 | $60,565 | Credit Suisse, Valartis |
| 2006 | $83,398 | Credit Suisse, Valartis |

| 2007 | $94,807 | Credit Suisse, Valartis |
| 2008 | $76,680 | Credit Suisse, Valartis |
| 2009 | $107,477 | Credit Suisse, Valartis |
| 2010 | $181,977 | Valartis, DZ Privatbank |
| 2011 | $214,910 | Valartis, DZ Privatbank |
| 2012 | $177,185 | DZ Privatbank, Loyal Bank |
| 2014 | $49,366 | Loyal Bank |

84.     A delegate of the Secretary of the Treasury gave notice of the assessments described above to Mr. Sawyer and demanded payment of the assessments from him.

85.     Despite the notice and demand for payment, Mr. Sawyer failed to pay the penalties assessed against him.

86.     Interest and penalties were assessed and have accrued and will continue to accrue, pursuant to 31 U.S.C. § 3717.

87.     As of June 8, 2022, Mr. Sawyer is indebted to the United States in the amount of $1,127,662.67, plus statutory additions that continue to accrue from and after June 8, 2022, as provided by law.

88.     Mr. Sawyer was required to file an FBAR for each of the 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2014 calendar years by June 30 of the following year.

89.     Although an assessment of FBAR penalties must generally be made within the applicable six-year statute of limitations, 31 U.S.C. § 5321(b)(1), the

17

penalty assessments against Mr. Sawyer were timely because he agreed to extend the limitations period.

90.    On June 12, 2014, Mr. Sawyer signed an extension, extending the statute for the 2005 through 2012 years to December 31, 2016.

91.    On July 11, 2016, Mr. Sawyer signed another extension, extending the statute for the 2005 through 2011 years to December 31, 2017.

92.    On April 10, 2017, Mr. Sawyer signed another extension, extending the statute for the 2005 through 2011 years to December 31, 2018.

93.    On May 2, 2018, Mr. Sawyer signed another extension, extending the statute for the 2005 through 2012 years to December 31, 2019.

94.    On April 1, 2019, Mr. Sawyer signed another extension, extending the statute for the 2005 through 2014 years through December 31, 2021.

95.    The willful FBAR penalties against Mr. Sawyer were assessed on April 16, 2021.

### CLAIM TO REDUCE NON-WILLFUL FBAR PENALTIES TO JUDGMENT
### (AGAINST DEFENDANT ASTA S. SAWYER)

96.    The defendant Mrs. Asta Sawyer was subject to the reporting requirements contained in 31 U.S.C. § 5314 for the 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2014 calendar years because she was a United States citizen, she had an interest in and/or signature or other authority over the above-described foreign accounts, and the balance of the accounts exceeded $10,000 each year.

97.    Mrs. Sawyer violated the reporting requirements of 31 U.S.C. § 5314 because she failed to timely report the above-described foreign accounts on FBARs.

98.     On April 6, 2021, a delegate of the Secretary of the Treasury assessed civil penalties under 31 U.S.C. § 5321(a)(5) against Asta S. Sawyer, in the amount of $10,000 for each of the calendar years 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2014, for a total of $90,000.

99.     A delegate of the Secretary of the Treasury gave notice of the assessments described above to Mrs. Sawyer and demanded payment of the assessments from her.

100.    Despite the notice and demand for payment, Mrs. Sawyer failed to pay the penalties assessed against her.

101.    Interest and penalties were assessed and have accrued and will continue to accrue, pursuant to 31 U.S.C. § 3717.

102.    As of June 8, 2022, Mrs. Sawyer is indebted to the United States in the amount of $97,283.84, plus statutory additions that continue to accrue from and after June 8, 2022, as provided by law.

103.    Mrs. Sawyer was required to file an FBAR for each of the 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2014 calendar years by June 30 of the following year.

104.    Although an assessment of FBAR penalties must generally be made within the applicable six-year statute of limitations, 31 U.S.C. § 5321(b)(1), the penalty assessments against Mrs. Sawyer were timely because she agreed to extend the limitations period.

105.   On June 12, 2014, Mrs. Sawyer signed an extension, extending the statute for the 2005 through 2012 years through December 31, 2016.

106.   On June July 11, 2016, Mrs. Sawyer signed another extension, extending the statute for the 2005 through 2011 years through December 31, 2017.

107.   On April 10, 2017, Mrs. Sawyer signed another extension, extending the statute for the 2005 through 2011 years to December 31, 2018.

108.   On June 27, 2017, Mrs. Sawyer signed another extension, extending the statute for the 2005 through 2011 years through December 31, 2018.

109.   On May 2, 2018, Mrs. Sawyer signed another extension, extending the statute for the 2005 through 2012 years through December 31, 2019.

110.   On April 1, 2019, Mrs. Sawyer signed another extension, extending the statute for the 2005 through 2014 years through December 31, 2021.

111.   The non-willful FBAR penalties against Mrs. Sawyer were assessed on April 6, 2021.

WHEREFORE, the plaintiff United States of America requests that the Court:

A.   Enter judgment in favor of the plaintiff United States of America and against the defendant Donald M. Sawyer for willful FBAR penalties for years 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2014 under 31 U.S.C. § 5321(a)(5), in the amount of $1,127,662.67, plus statutory additions, including interest and late-payment penalties pursuant to 31 U.S.C. § 3717, accruing from and after June 8, 2022;

B.      Enter judgment in favor of the plaintiff United States of America and against defendant Asta S. Sawyer, for non-willful FBAR penalties for years 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2014 under 31 U.S.C. § 5321(a)(5), in the amount of $97,283.84, plus statutory additions, including interest and late-payment penalties pursuant to 31 U.S.C. § 3717, accruing from and after June 8, 2022; and,

C.      Award the United States its costs incurred in connection with this action, and such other and further relief as the Court determines is just and proper.

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Ryan D. Galisewski*
RYAN D. GALISEWSKI
ISABELLE DIETZ
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
Tel: 202-305-3719 (Galisewski)
Tel: 202-514-3714 (Dietz)
Fax: 202-514-5238
Ryan.D.Galisewski@usdoj.gov
Isabelle.Dietz@usdoj.gov

Of Counsel:

JANE E. YOUNG
United States Attorney